**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:16-cv-189-RJC**
**(3:12-cr-259-RJC-DCK-1)**

| | | |
|---|---|---|
| **GLENN ADKINS, JR.,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 2), and numerous pending motions, (Doc. Nos. 8, 12, 16, 20, 22, 36, 37, 38, 40, 41, 45, 47, 49, 53, 56, 57, 59, 62, 73, 79, 88, 96, 102). The Government has filed a Response opposing relief. (Doc. No. 9).

## I.    BACKGROUND

Petitioner and co-defendant Warren Tonsing were indicted in a Costa Rican telemarketing fraud conspiracy. The charges pertaining to Petitioner are: Count (1), conspiracy to commit wire and mail fraud; Counts (2)-(9), wire fraud; Count (10), conspiracy to commit money laundering; and Counts (11)-(14), international money laundering. (3:12-cr-259, Doc. No. 9).

The Government presented evidence at trial that Petitioner and several co-defendants operated a call center in Costa Rica from which they made phone calls into the United States, posing as representatives of the Federal Trade Commission, Random House Publishing, and Lloyds of London. They presented a "pitch" in which they told victims that they had won large cash sweepstakes prizes but, in order to collect their winnings, they must wire money into Costa

1

Rica to purchase insurance and pay fees. The evidence against Petitioner included testimony from cooperating co-conspirators Christopher Coble and Andrew Longhurst who identified Petitioner as a call center "opener" and "reloader" who defrauded victims under the aliases Benjamin Walker and Robert Hayward. (3:12-cr-259, Doc. No. 174 at 58-59, 219). A jury found Petitioner guilty of all 14 Counts. (3:12-cr-259, Doc. No. 96).

The Presentence Investigation Report ("PSR") scored the base offense level as seven for wire fraud, plus the following enhancements: 18 levels for a loss amount greater than $2,500,000 but less than $7,000,000; six levels for more than 250 victims; two levels for misrepresenting that the defendant and/or conspirators were acting on behalf of a government agency; and two levels because a substantial part of the fraudulent scheme was committed from outside the United States. (3:12-cr-259, Doc. No. 118 at ¶ 28). Two levels were added because Petitioner was convicted under 18 U.S.C. § 1956, and for vulnerable victims, and three levels were added because Petitioner was a manager or supervisor. (3:12-cr-259, Doc. No. 118 at ¶¶ 29-31). This resulted in a total offense level of 42. (3:12-cr-259, Doc. No. 118 at ¶ 36). Petitioner had a criminal history score of four and two levels were added because Petitioner committed the instant offense while under a criminal justice sentence. (3:12-cr-259, Doc. No. 118 at ¶¶ 42, 43). The total criminal history score was therefore six and Petitioner's criminal history category was III. (3:12-cr-259, Doc. No. 118 at ¶ 44). The resulting guideline range was 360 months to life in prison. (3:12-cr-259, Doc. No. 118 at ¶ 80).

Petitioner's counsel filed objections arguing, *inter alia*, to the PSR's calculation of the loss amount and number of victims, arguing that the PSR relied on the "spreadsheet analysis" prepared by Agent Eric Kost was not reliable. (3:12-cr-259, Doc. No. 131). Counsel also filed a Motion for Sentencing Departure/Variance for the imposition of a sentence not greater than necessary to

achieve the purposes of sentencing and to avoid a sentencing disparity from his co-defendants' 24-month sentences. (3:12-cr-259, Doc. No. 134); <u>see also</u> (3:12-cr-259, Doc. No. 138).

The Court found that the loss amount was more than $1,000,000 and reduced the base offense level by two levels. This did not change the advisory guideline imprisonment range. The Court granted the defense motion to vary below the guidelines and sentenced Petitioner to 300 months' imprisonment as to Count (1) and 240 months as to Counts (2)-(14), concurrent, followed by two years of supervised release, and imposed restitution of $2,419,706.68. (3:12-cr-259, Doc. No. 144); <u>see</u> (3:12-cr-259, Doc. No. 177).

Petitioner argued on direct appeal that the Court erred in denying his motion for judgment of acquittal because the money laundering offenses merged with the wire fraud offenses, that the Court was required to submit Petitioner's restitution amount and facts underlying the application of the Sentencing Guidelines to the jury, and that the Court procedurally erred in applying several sentencing enhancements. The Fourth Circuit Court of Appeals affirmed, finding that Petitioner waived his merger argument by failing to assert it in a Rule 29 motion, that the Court was not required to submit the facts underlying Petitioner's Guidelines calculation and restitution amount to the jury, and that the Court did not clearly err in calculating the loss amount, number of victims, applying enhancements for vulnerable victims and a supervisory role. <u>United States v. Tonsing</u>, 629 Fed. Appx. 464 (4th Cir. 2015). The United States Supreme Court denied certiorari on March 28, 2016. <u>Adkins v. United States</u>, 136 S.Ct. 1506 (2016).

Petitioner filed a § 2255 Motion to Vacate on April 19, 2016, and he filed the instant Amended § 2255 Motion to Vacate on June 7, 2016. (Doc. Nos. 1, 2). He raises a number of claim of substantive error and ineffective assistance of trial and appellate counsel.

## II. STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under .

. . *Strickland* if the 'result of the proceeding was fundamentally unfair or unreliable.'" *Sexton v. French*, 163 F.3d 874, 882 (4th Cir. 1998) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." *Bowie v. Branker*, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. *Strickland*, 466 U.S. at 697.

*Strickland* applies in the context of appellate representation. To show prejudice, a petitioner must show a "reasonable probability ... he would have prevailed on his appeal" but for his counsel's unreasonable failure to raise an issue. *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000); *see also United States v. Mannino*, 212 F.3d 835, 845-46 (3d Cir. 2000) ("The test for prejudice under *Strickland* is not whether petitioners would likely prevail upon remand, but whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal.").

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. *See Raines v. United States*, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION[1]

### (1) Substantive Error

### (A) Illegal Arrest & Extradition

---

[1] Petitioner's lengthy and duplicative claims in the 77-page § 2255 petition have been renumbered and consolidated for purposes of this discussion. Any claim or argument not specifically mentioned in the discussion is denied.

Petitioner contends that the United States violated his constitutional rights and the Extradition Treaty with Costa Rica by seizing him in Costa Rica and extraditing him on June 25, 2012. He claims that a Costa Rican court had issued a judicial mandate[2] barring his removal from Costa Rica and that U.S. agents unlawful coordinated efforts to seize Petitioner and remove him from Costa Rica on a national holiday when government agencies were closed. The U.S. had a duty to use procedures in place to request Petitioner's extradition from Costa Rica and not seize and remove him unlawfully. U.S. embassy personnel breached their duties by seizing Petitioner and transferring him to U.S. Marshals agents who unlawfully removed him from Costa Rica against his will. Petitioner informed counsel about the Costa Rican mandate and instructed counsel to challenge his seizure and removal. None of his lawyers complied and told him to use his argument as leverage in plea negotiations or to raise the issue in a § 2255 petition.

The Government asserts that Petitioner was deported from Costa Rica, not extradited, and thus his repatriation to the United States did not implicate the Extradition Treaty between Costa Rica and the United States.

The record supports the Government's representations. Petitioner's arrest warrant indicates that he was arrested in the underlying criminal case in Arizona on July 30, 2012. (3:12-cr-259, Doc. No. 5). The United States District Court for the District of Arizona held a detention hearing on August 6, 2012, case number 12-7399M.[3] The Arizona District Court found in its Order of

---

[2] Petitioner has attached to his Amended § 2255 Motion to Vacate a document purporting to be a Costa Rican "Judicial Mandate/Habeas Corpus Order" dated July 25, 2012, and translation completed by Petitioner. (Doc. No. 2-4 at 18, 21). It states that a writ of habeas corpus was filed on behalf on Petitioner against the General Director of Immigration and Alienage, that a response must be filed within three days, and that the General Director of Immigration and Alienage ensure that Petitioner "not abandon the national territory unless he willfully and voluntarily wishes to do so and does so being duly apprised by counsel of the legal consequences thereto of any such decision. Disobedience of the orders promulgated by the Constitutional Jurisdiction, in conformance with article 71 of the cited Law, shall find themselves penalized to three months to two years imprisonment or from twenty to sixty days of fine(s)." (Doc. No. 2-4 at 19).

[3] The Court takes judicial notice of the Arizona District Court's online docket. See Fed. R. Ev. 201.

Detention that "Defendant was actually deported or removed by the Costa Rican Government because he was not living lawfully in Costa Rica." (2:12-mj-7399, Doc. No. 10 at 4). Petitioner claimed that he was returning to San Diego to turn himself in when he was arrested, which the Arizona Court rejected as incredible and unsupported by any evidence. (Id.).

Petitioner's present allegations about having been illegally seized by U.S. agents in Costa Rica are rejected. Moreover, Petitioner has failed to establish that any law violation occurred with regards to his arrest and presence in the United States. This claim is therefore denied.

**(B)**     **Jurisdiction and Venue**

Petitioner appears to argue that the Court lacked jurisdiction and venue to try him because he was illegally arrested in Costa Rica and was brought to the United States against his will.

The district courts of the United States "have original jurisdiction, exclusive of the courts of the states, of all offenses against the laws of the United States." 18 U.S.C. § 3231 (2006). Physical presence in the United States usually supplies the only necessary prerequisite for personal jurisdiction in a federal criminal prosecution. See United States v. Wilson, 721 F.2d 967, 972 (4th Cir. 1983) ("It has long been the general rule that a court's power to try a criminal defendant is not impaired by the government's use of even forcible abduction to bring the defendant within the court's jurisdiction."). The manner through which a defendant found himself within the United States generally does not affect the jurisdiction of the district court to preside over his prosecution. See United States v. Alvarez–Machain, 504 U.S. 655, 657 (1992) (district court had jurisdiction over prosecution of Mexican national who had been forcibly kidnapped and brought to the United States where abduction did not violate extradition treaty between United States and Mexico); United States v. Porter, 909 F.2d 789, 791-92 (4th Cir.1990) (district court had jurisdiction over defendants involuntarily deported from the Philippines to the United States).

Venue in a federal criminal prosecution lies in the district in which the alleged crime was committed. Fed. R. Crim. P. 18; U.S. Const. Art. III, § 2, Cl. 3; U.S. Const. Amend VI. Wire fraud is properly tried in any district where a payment-related wire communication was transmitted in furtherance of the fraud scheme. See United States v. Ebersole, 411 F.3d 517, 527 (4th Cir. 2005) (addressing venue);18 U.S.C. § 3237(a) (general venue statute). Conspiracy is a continuing offense so its prosecution is proper in any district in which the offense was begun, continued, or completed. 18 U.S.C. § 3237(a). Money laundering offense can be brought in any district where a prosecution for the underlying specified unlawful activity could be brought. 18 U.S.C. § 1956(i)(1).

The Government presented evidence that Petitioner engaged in the charged offenses by phoning victims in the United States from Costa Rica and instructing them to wire money to Costa Rica, and many of the wiring transactions went through Charlotte. (3:12-cr-259, Doc. No. 175 at 68). Petitioner's present conclusory and unsupported claim that the Court lacked jurisdiction and venue is refuted by the record and is denied. See generally United States v. Dyess, 730 F.3d 354 (4th Cir. 2013) (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court).

**(C)**    **Withdrawal of Counsel**

Petitioner contends that the Court violated the Sixth Amendment by providing Petitioner's "inquiry of counsel letter" to the United States and for allowing the Government to attend the hearing on the matter which should have been conducted *ex parte*. (Doc. No. 2 at 18). Petitioner claims that, immediately upon becoming unrepresented, prosecutor Donley solicited information/evidence from Petitioner. The United States "subsequently took the fraudulent, contrary position that it had not solicited information/evidence from Movant and prejudicially introduced Government's Exhibit 50A under such false pretenses." (Doc. No. 2 at 18). The jury

and Court viewed and considered the evidence that should not have been before it, which resulted in a reasonable probability of a different trial outcome.

Petitioner filed a Letter dated November 19, 2012, that was not sealed, asking the Court to replace Mr. Fischer as defense counsel. (3:12-cr-259, Doc. No. 39). In it, he alleges that he provided information to counsel in an effort to obtain a downward departure for substantial assistance but that counsel failed to forward the information to the Government, for failing to visit him and ignoring his phone calls, and for admittedly lying to him on at least three occasions. Petitioner asks that counsel be required to provide Petitioner's communications to him to the Court for *in camera* inspection. (3:12-cr-259, Doc. No. 39 at 5).

Counsel filed a Motion to Withdraw under seal on January 21, 2013, in which he explained that Petitioner had filed a motion to have him removed, the attorney-client relationship had deteriorated, and Petitioner made allegations against counsel that have given rise to a conflict of interest would make it unethical for him to continue representing Petitioner. (3:12-cr-259, Doc. No. 40). The Court's electronic docket sheet indicates that the entry was modified on January 23, 2013 "to give USA access." (Id.).

The matter came before Judge Keesler for a hearing on January 28, 2013, which Petitioner, Mr. Fischer, and the two prosecutors attended. (3:12-cr-259, Doc. No. 176). Petitioner explained he would like a lawyer who is local and who does not have a conflict of interests. (3:12-cr-259, Doc. No. 176 at 8). Before the Court ruled on the motion to withdraw, prosecutor Donley addressed the allegation in Petitioner's letter that counsel had failed to turn over information to the Government towards substantial assistance:

> MR. DONLEY: There is one issue in Mr. Adkins' letter that I thought I should mention and it deals with whether or not it's too late to turn over certain things to the Government and it's not. I wanted to make that clear on the record.

The conversations between counsel and the defendant, of course, we're not privy to, but at least to that area I wanted to make it clear that, you know, it's not too late.

THE COURT: … [I]s it fair to say that … Mr. Adkins' cooperation, if he desired to give it, would still be welcome?

MR. DONLEY: Yes.

(3:12-cr-259, Doc. No. 176 at 10).

Judge Keesler went on to apply the criteria in <u>United States v. Mullen</u>, 32 F.3d 891 (4th Cir. 1994), and granted counsel's Motion to Withdraw without objection by the Government and ordered the appointment of new counsel. (3:12-cr-259, Doc. No. 176 at 12). Petitioner asked at the end of the hearing to "communicate something to Mr. Donley," and the Court instructed him to "wait till [his] new lawyer is appointed." (3:12-cr-259, Doc. No. 176 at 13).

Petitioner's contention that Judge Keesler erroneously provided copies of the *pro se* Letter to the prosecutors is conclusively refuted by the record. Petitioner did not file that document under seal. To the extent Petitioner meant to refer to counsel's Motion to Withdraw, the record does not indicate why the Government was granted access to that document electronically several days before the hearing. In any event, Petitioner fails to explain how its disclosure was erroneous as it does not contain any greater or different information than Petitioner's unsealed letter. Petitioner's claim that prosecutor Donley attempted to take advantage of his unrepresented status is also refuted by the record. Mr. Donley simply addressed one of the concerns Petitioner set forth in his *pro se* Letter, that counsel had failed to turn over information to the Government in furtherance of substantial assistance, by stating on the record that it was not too late for Petitioner to provide the Government with information. Taken in context, Mr. Donley was not attempting to obtain information from Petitioner and Petitioner was not unrepresented at the time that statement occurred. Moreover, when Petitioner attempted to talk to Mr. Donley at the end of the hearing after

counsel had been dismissed, the Court advised him not to do so until a new attorney was representing him.

Petitioner's claim that his constitutional rights were violated with regards to the pleadings and hearing on counsel's withdrawal is lacking in any legal or factual basis and is therefore denied.

**(D)** **Evidentiary Issues**

Petitioner contends that the Court erred by (i) precluding Petitioner from presenting the "Coble Interrogatories" at trial, and (ii) admitting Petitioner's statements in Exhibit 50A.

(i)    Petitioner argues that the so-called Coble Interrogatories should have been admitted at trial. He contends that the Government unduly prejudiced him by inferring to the Court that Petitioner had intimidated Coble into answering the 13 questions, and that, if introduced at trial, they would have contradicted the prosecution's theory that "runners" were exclusive and would have undermined Coble's trial testimony.

Attorneys admitted to practice before this Court agree to abide by the Court's local rules as well as the North Carolina Rules of Professional Conduct. LCvR 83.1(a). The North Carolina Rules of Professional Conduct bar an attorney from "communicat[ing] or caus[ing] another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." Rule 7.4, NC RPC. "The general prohibition against an attorney having *ex parte* contact with a represented party is based on several rationales. These rationales include preventing an attorney from circumventing opposing counsel to obtain unwise statements from an adverse party." Lewis v. CSX Transp., Inc., 202 F.R.D. 464, 466 (W.D. Va. 2001) (citing Armsey v. Medshares Mgmt. Servs., Inc., 184 F.R.D. 569, 573 (W.D. Va. 1998)). Ethical violations may result in sanctions such as disqualification of counsel, divulging the contacts,

prohibiting their use as admissions, and imposing monetary sanctions. McCallum v. CSX Transp., Inc., 149 F.R.D. 104, 111 (M.D.N.C. 1993).

In the instant case, the Government found out that Petitioner had asked Coble, with whom Petitioner shared a cell block, to complete written "interrogatories" that were slipped under Coble's cell door. The Government spoke to Coble's lawyer who said that she had not authorized contact with her client. The Government then met with Coble with his attorney's permission. Coble said that Petitioner told Coble that there were questions his lawyer wanted him to answer and that Coble felt uncomfortable being asked questions by Petitioner. (3:12-cr-259, Doc. No. 172 at 26-27). Petitioner answered them and returned them. "[H]e felt concerned that he – if he didn't answer them, he was concerned about retribution by Adkins," who had a prior history of assault with a deadly weapon. (3:12-cr-259, Doc. No. 172 at 27). Petitioner's counsel said that he "did not ask Mr. Adkins to ask these questions … [and] did not encourage him to ask these questions…. The truth of it is these fellas had been friends in Costa Rica." (3:12-cr-259, Doc. No. 172 at 28).

The Court found that the information was obtained without prior authorization from the Court and enjoined Petitioner from using information from the Coble Interrogatories that could not be gleaned from another source at trial:

> THE COURT: I'm not saying you're precluded from using any information gleaned solely from the response of Mr. Coble to the interrogatories, the 15 interrogatories in any way. And so he might give you an answer. If your investigation or common sense or any other tool of a cross examiner leads you to ask another question, you're entitled to do that. But you're not to use the information in the form of the 15 question and answer document or any of the information in it that you haven't gleaned from some other source without authorization from the court.

(3:12-cr-259, Doc. No. 172 at 29).

The Court, after concluding that an improper communication with a represented party had occurred and imposed an appropriate sanction by excluding from trial the information that the

defense improperly gleaned from that document. Petitioner has failed to demonstrate that the Court's ruling was erroneous.

(ii)     Petitioner contends that the Court improperly admitted Exhibit 50A at trial because Petitioner provided it to the Government during plea negotiations. (Doc. No. 2 at 31). He argues that the United States took the "fraudulent" position at trial that it had not solicited the letter. (Doc. No. 2 at 2). Counsel was on notice that the Government intended to introduce this exhibit, did not consult with Petitioner until the pretrial motion hearing was underway, and failed to develop facts regarding this issue. As a result, the jury and Court were privy to information in Exhibit 50A that they were not entitled to hear and which probably changed the outcome of trial and sentencing.

Statements made "during plea discussions" with a prosecutor are not admissible if the discussions did not result in a guilty plea. Fed. R. Ev. 410(a)(4). However, "an agreement to waive the exclusionary provisions of the plea-statement rules is valid and enforceable." United States v. Mezzanatto, 513 U.S. 196, 210 (1995). A proffer agreement "defines the obligations of the parties and is intended to protect the defendant against the use of his or her statements, particularly in those situations in which the defendant has revealed incriminating information and the proffer session does not mature into a plea agreement or other form of cooperation agreement." United States v. Lopez, 219 F.3d 343, 345 n.1 (4th Cir. 2000). A statement is not hearsay if it is offered against an opposing party and was made by the party in an individual or representative capacity. Fed. R. Ev. 801(d)(2)(A).

On October 1, 2012, Petitioner, his counsel, and prosecutors signed a Proffer Agreement before Petitioner engaged in the first of two meetings with the Government. It provides in pertinent part:

Neither this agreement nor the meeting constitutes a plea discussion or an attempt to initiate plea discussions. In the event this agreement or the meeting is later construed to constitute a plea discussion or an attempt to initiate plea discussions, Client knowingly and voluntarily waives any right Client might have under Fed. R. Ev. 410, Fed R. Crim. P. 11(f), or otherwise, to prohibit the use against Client of statements made or information provided.

…

It is understood that this agreement is limited to the statements made by Client at the meeting and does not apply to any oral, written or recorded statements made by Client at any other time.

(3:12-cr-259, Doc. No. 90-1 at 8).

On January 24, 2013, Petitioner wrote a letter to Mr. Donley that the Government has characterized as "unsolicited," in which he made some admissions about the sweepstakes fraud conspiracy. See (3:12-cr-259, Doc. No. 86-1 at 1).

Counsel filed a Motion in Limine arguing that Petitioner's January 24, 2013, letter was an "attempt[] to further his negotiations toward an acceptable plea agreement" and is inadmissible. (3:12-cr-259, Doc. No. 86 at 1). Counsel argued at the motions hearing that the letter is covered by the proffer agreement because Petitioner did not see himself as being represented by his attorney and he thought he was still operating under the proffer agreement at that time. (3:12-cr-259, Doc. No. 86 at 5-9). The Court found that the letter "is not covered by the proffer" agreement due to the proffer agreement's provision that the agreement applies only to Petitioner's meeting with the Government and not to any subsequent oral or written statements. (3:12-cr-259, Doc. No. 86 at 5, 14).

At trial, Coble testified that he recognized Exhibit 50A, the heavily redacted handwritten letter to Mr. Donley dated January 24, 2013, as Plaintiff's handwriting. (3:12-cr-259, Doc. No. 174 at 96-97). The Court admitted Exhibit 50A into evidence over Petitioner's objection. (Id. at 97). Coble read the redacted letter into evidence regarding whether Patricia Clark "knew that we

were defrauding people and if she (Clark) was a willing participant, or a co-conspirator….” (<u>Id.</u> at 98).

No evidentiary error occurred because Petitioner entered into a Proffer Agreement that expressly excluded any written statements and waived application of Rule 410. The January 24 letter and it was therefore properly admitted as a party admission.

**(E)**     <u>**Prosecutorial Misconduct**</u>

Petitioner contends that the Government engaged in prosecutorial misconduct by: (i) filing an ethics violation against defense counsel Richard H. Tomberlin for improper contact with witness Christopher Lee Coble with regards to the Coble Interrogatories; and (ii) withholding from the defense the Longhurst Proffer. He claims that the evidence that was unlawfully withheld for which there was a reasonable probability that, but for the withholding of such, the result of the trial may have been different. (Doc. No. 2 at 40).

(i)     Petitioner contends that the Government engaged in misconduct by accusing defense counsel of an ethics violation re the Coble Interrogatories.

Communicating with a represented party is an ethical violation. <u>See</u> Section (1)(D)(i), *supra*. Petitioner fails to explain how the prosecution engaged in any impropriety by calling this potential ethical violation to the Court’s attention.

(ii)     Petitioner argues that the Government failed to disclose the Longhurst Proffer in violation of its discovery obligation pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963).

The Government represents that it produced all co-conspirator interviews to the defense including those of cooperating conspirators Coble and Longhurst. (Doc. No. 9 at 12-13). The veracity of this representation is confirmed by counsel’s attachment of Memorandum of Interview

forms ("MOI") for individuals including Coble and Longhurst to his Sentencing Brief. (3:12-cr-259, Doc. No. 135). Further, Petitioner tacitly admits in his § 2255 Motion to Vacate that the co-conspirators' statements had, indeed, been provided to counsel. <u>See</u> (Doc. No. 2 at 47) (Petitioner "instructed Compulsory Counsel to visit him and bring all of the MOIs the United States had produced in relation to Movant's matter in re Longhurst and Coble…."); (Doc. No. 2 at 65) (alleging that counsel did not reveal to Petitioner until just before sentencing an MOI that included Coble's alleged threat to Felipe Fernandez).

Petitioner's <u>Brady</u> claim is defeated by the record as well as his own § 2255 allegations and is therefore rejected.

**(2)     <u>Ineffective Assistance of Counsel</u>**

**(A)     <u>Trial Preparation</u>**

Petitioner contends that trial counsel was ineffective pre-trial for: (i) failing to argue that his arrest and extradition were illegal; (ii) failing to argue that the Court lacked jurisdiction and venue; (iii) failing to move for a bill of particulars; (iv) failing to conduct "thorough and creative investigation" and investigate evidence which would have diminished and or impeached witness credibility before Movant's jury and the Trial Court. (Doc. No. 2 at 33); (v) visiting Petitioner only three time to prepare for trial; (vi) failing to adequately and completely argue the violation of Movant's Sixth Amendment rights by admitting into evidence at trial Government's Exhibit 50A. (Doc. No. 2 at 31).

(i)     Counsel was not ineffective for failing to argue that Petitioner's arrest and extradition were illegal because those claims are meritless. <u>See</u> Claim (1)(A), *supra*; <u>see generally</u> <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success.").

(ii)     Counsel was not ineffective for failing to argue that the Court lacked jurisdiction and venue over Petitioner's criminal case because those allegations are meritless. <u>See</u> Claim (1)(B), *supra*; <u>Knowles</u>, 556 U.S. at 123).

(iii)     Petitioner argues that counsel should have moved for a bill of particulars to challenge the Court's venue and jurisdiction.

A criminal defendant may move for a bill of particulars within 14 days after arraignment, or at a later time if the court permits. Fed. R. Crim. P. 7(f). A bill of particulars identifies for the defendant the area within which the government's chief evidence will fall. <u>United States v. Fletcher</u>, 74 F.3d 49, 53 (4th Cir. 1996). Its purpose "is to fairly apprise the defendant of the charges against him so that he may adequately prepare a defense and avoid surprise at trial ... not ... to provide detailed disclosure of the government's evidence in advance of trial." <u>United States v. Automated Medical Labs., Inc.</u>, 770 F.2d 399, 405 (4th Cir.1985) (citation omitted); <u>see</u> <u>also</u> <u>United States v. Schembari</u>, 484 F.2d 931, 934-35 (4th Cir.1973). A bill of particulars is not part of the indictment and does not change or an amendment the charges, rather, if merely amplifies the indictment by providing missing or additional information so that the defendant can effectively prepare for trial. <u>United States v. Howard</u>, 590 F.2d 564, 567 (4th Cir. 1979); <u>United States v. Johnson</u>, 575 F.2d 1347, 1356 (5th Cir.1978).

Petitioner does not state how the indictment failed to apprise him of the charges against him or how counsel's failure to request a bill of particulars prevented him from effectively preparing for trial. Counsel was not ineffective for failing to move for a bill of particulars because Petitioner has set forth no valid grounds upon which counsel should have done so that would have probably changed the outcome of trial.

(iv)     Petitioner contends that counsel failed to conduct "thorough and creative investigation" and investigate evidence which would have diminished and or impeached witness credibility before the jury and the Court. Before trial, Coble told police "hawaiivic3" recording of a telemarketer threatening a victim, that Longhurst identified as either Esteban Fernandez or Alvarado, sounded like Petitioner as though he was suffering from a hangover, talking on a payphone. Petitioner knew the voice was not his even though the United States was attributing it to him. Petitioner instructed counsel to demand production of the audio file, introduce it into evidence at trial, and cross examine Longhurst and Coble to impeach their credibility. Counsel disregarded Petitioner's instruction to investigate and argue this on his behalf. Neither the jury nor the court benefitted from hearing about Coble's efforts to falsely incriminate Petitioner.

"Although counsel should conduct a reasonable investigation into potential defenses, Strickland does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client." Green v. French, 143 F.3d 865, 892 (4th Cir. 1998), *abrogated on other grounds*, Williams v. Taylor, 529 U.S. 362 (2000). In the end, "a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments." Wiggins v. Smith, 539 U.S. 510, 521-22 (2003).

Reasonable counsel could have concluded that a poor-quality audio recording in which a victim was threatened by a person who at least one witness thought resembled Petitioner's  voice could have been detrimental to the defense. See, e.g., Shippy v. United States, 112 F.Supp.3d 355 (W.D.N.C. 2015) (counsel may have foregone voice analysis of recorded phone calls to all himself the opportunity to argue a reasonable doubt existed as to whether it was defendant's voice that had been recorded); Fenn v. United States, 175 F.Supp.3d 602, 615 (E.D. Va. 2016) (counsel's failure

to discover and present partial alibi defenses at trial was not prejudicial where the alibis did not convincingly place Petitioner outside of the household at the time of child pornography download, and several could aggravate the case against him by demonstrating that he was in the area surrounding the home and capable of reaching the home by car in time to commit the downloads). Petitioner's general allegation that counsel failed to conduct a "creative and thorough investigation" is too vague and conclusory to support relief. See generally Dyess, 730 F.3d at 354 (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court).

(v)     Petitioner contends that counsel visited him only eight times before trial, and only three of these meetings occurred between the time Petitioner decided to go to trial and the trial's start. He alleges that the three trial preparation legal visits were brief and "of little substance." (Doc. No. 2 at 36). Petitioner also complaints that counsel did not visit him during trial to review each day's proceedings to prepare for the next day of trial.

Counsel is not required to visit with a criminal defendant any particular number of times; Petitioner's contention that counsel did not visit with him frequently enough is inadequate to demonstrate deficient performance. Moreover, this claim is facially insufficient because Plaintiff has failed to demonstrate prejudice. He does not explain how more visits from counsel or further discussion of the various topics he has identified in his § 2255 petition would have reasonably resulted in a different trial outcome. See generally Dyess, 730 F.3d at 354 (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court).

(vi)     Petitioner contends that counsel failed to adequately and completely argue the violation of Movant's Sixth Amendment rights by Magistrate Keesler and the resultant

admission into evidence at trial of Government's Exhibit 50A, based on the fraudulent position by the United States it had not solicited such evidence. (Doc. No. 2 at 31).

This claim is meritless for the reasons set forth in Section (1)(D)(ii), *supra*, and therefore, counsel cannot be deemed ineffective for failing to raise it. See generally Knowles, 556 U.S. 111 at 123 ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success."). Moreover, Petitioner has failed to demonstrate prejudice because he does not explain what more or different argument counsel could have made that would have caused the Court to grant the Motion in Limine and does not explain how suppression of the heavily redacted letter would have probably changed the outcome of trial in light of the strong evidence of Petitioner's guilt.

**(B)** **Trial**

Petitioner contends that trial counsel was ineffective for failing to adequately argue in a Rule 29 motion that the money laundering and wire fraud counts were merged in the Indictment.

The Government argues that this claim is barred from § 2255 review because it was resolved on direct appeal. See Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976). The court disagrees. Petitioner raised the merger argument on direct appeal but the Fourth Circuit declined to resolve it on the merits because Petitioner "waived [his] merger argument by failing to assert it in [his] Rule 29 Motions." Tonsing, 629 Fed. Appx. at 465.

In United States v. Santos, 553 U.S. 507 (2008), the Supreme Court considered whether the term "proceeds" in the money laundering statute, 18 U.S.C. § 1956(A)(1), means "receipts" or "profits" because the statute did not define "proceeds" prior to 2009. United Staets v. Abdulwahab, 715 F.3d 521, 529 (4th Cir. 2013). A merger problem occurs when the government attempts to convict a defendant of "money laundering for paying the essential expenses of operating the

underlying crime." <u>United States v. Halstead</u>, 634 F.3d 270, 279 (4th Cir. 2011) (when a defendant's crime involves the use of "money transactions to pay for the costs of the illegal activity," the government cannot use those same money transactions to also "prosecute the defendant for money laundering") (internal quotation omitted). No merger problem arises "when the financial transactions of the predicate offense are different from the transactions prosecuted as money laundering." <u>Id.</u> at 279–80. In order to correct the merger problem in <u>Santos</u>, the Court defined "proceeds" as "profits." <u>See</u> <u>Santos</u> at 409. Congress subsequently amended the money laundering statute in 2009 to define "proceeds" as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. § 1956(c)(9); <u>see</u> <u>United States v. Allmendinger</u>, 894 F.3d 121, 127 n.2 (4th Cir. 2018).

In the instant case, the Government charged Petitioner with wire fraud in Counts (2) through (9), and international money laundering in violation of 18 U.S.C. § 1956(a)(2)(A) in Counts (11) through (14). Unlike the money laundering provision in <u>Santos</u>, 18 U.S.C. § 1956(A)(1), the international money laundering provision, § 1956(a)(2)(A), does not suffer from a merger problem because it does not use the term "proceeds." Moreover, there is no overlap between the wire fraud incidents charged in Counts (2) through (9), and the international money laundering incidents charged in Counts (11) through (14). Counsel was not deficient for failing to raise a meritless merger argument in a Rule 29 motion. <u>See</u> <u>generally</u> <u>Knowles</u>, 556 U.S. at 123 ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success.").

**(C)** **<u>Sentencing</u>**

Petitioner contends that counsel was ineffective at sentencing for: (i) failing to investigate and present adequate evidence to support a downward variance; (ii) refusing to obtain a favorable defense witness who could have rebutted the prosecution's narrative regarding the amount of loss, number of victims, and restitution; and (iii) failing to adequately preserve Petitioner's objections to the PSR and develop a record on appeal.

(i)     Petitioner contends that counsel was ineffective for refusing to develop the facts and obtain the sentencing transcripts and judgment orders as to Longhurst, Coble, and Emilio Torres in order to competently assert a Fourteenth Amendment right to obtain a downward variance and for filing a "mistake-ridden" motion without Petitioner's consultation or consent. (Doc. No. 2 at 47). He argues that counsel failed to adequately argue sentencing disparity with Coble, Longhurst, and Emilio Torres, and failed to timely argue that Petitioner's participation in rehabilitative programs and charitable work warranted a reduced sentence and did not adopt his sentencing arguments.

The record reveals that no ineffective assistance occurred. As a preliminary matter, the record refutes Petitioner's allegations that counsel was deficient for failing to argue sentencing disparity. Counsel filed a Motion for Sentencing Departure/Variance asking the Court to depart from the guidelines for several reasons, including avoidance of a sentencing disparity with Longhurst and Coble, who each received a 24-month sentence. (3:12-cv-259, Doc. No. 134).

The record also refutes Petitioner's contention that counsel failed to adequately present his participation in charitable and rehabilitative programs. Counsel argued that Petitioner has a sixth-grade formal education, got his GED, and has been able to obtain contractor degrees in California, and worked to open his own electronics business in Costa Rica. (3:12-cr-259, Doc. No. 177 at 66-67). Counsel also called Sheena Blanchard at the sentencing hearing who testified that she had

known Petitioner for 11 or 12 years and that they ran marathons together and raised money for the Leukemia and Lymphoma society, and that he engaged in other charitable work. (3:12-cv-259, Doc. No. 177 at 71).

The Court granted counsel's motion and imposed a sentence below the advisory guidelines, *inter alia*, in order to avoid an unwarranted sentencing disparity and due to Petitioner's history and characteristics. <u>See</u> (3:12-cv-259, Doc. No. 145 at 3).

Petitioner's suggestion that he would have received a further sentence reduction had counsel presented these arguments more effectively is rejected. First, Petitioner's argument that he should have received a further reduction based on sentencing disparity with Coble, Longhurst, and Torres, is meritless. Pursuant to § 3553(a)(6), the district court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." <u>United States v. Clark</u>, 434 F.3d 684, 686 (4th Cir. 2006).

Longhurst pled guilty in case number 3:11-cr-103 to attempt and conspiracy to commit mail fraud and to wire fraud. He was sentenced to 24 months, concurrent, followed by three years of supervised release. Coble pled guilty in case number 3:12-cr-106 to wire fraud conspiracy and was sentenced to 24 months' imprisonment followed by three years of supervised release. Both of these are listed as "related cases" in Petitioner's PSR. There is a "related case" for Emilio Torres in Petitioner's PSR, case number 3:10-cr-237, however, that case was dismissed on June 21, 2012. Torres pled guilty in case number 3:11-cr-275-MOC to attempt and conspiracy to commit mail fraud, wire fraud, and money laundering. He was sentenced to 84 months' imprisonment, concurrent, and two years of supervised release.

Unlike Longhurst, Coble, and Torres, who pled guilty and received a three-level reduction under the USSG. Petitioner did not qualify for that reduction. Longhurst and Coble cooperated with the Government, thus earning a downward departure, whereas Petitioner did not cooperate. Further, Coble, Longhurst, and Torres were convicted of one, two, and three counts, respectively, whereas Petitioner was convicted of 14 counts. There is no reasonable probability under these circumstances that the Court would have imposed a lower sentence had counsel raised additional or different arguments with regards to disparity.

Second, Petitioner has failed to explain why the Court would have granted a greater sentence reduction had counsel raised his charitable and rehabilitative work earlier in the sentencing hearing. Nor has he identified additional information that counsel failed to present that had a reasonable probability of resulting in a greater sentence reduction.

Finally, to the extent that Petitioner argues counsel was ineffective for failing to communicate with him more or adopt his sentencing arguments, this claim is denied because counsel had no obligation to adopt Petitioner's arguments. See generally Knowles, 556 U.S. at 123 ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success."). Petitioner has not identified any evidence or argument that counsel could have presented that had a reasonable probability of resulting in a lower sentence.

(ii)     Petitioner contends that counsel was ineffective for refusing to obtain a favorable defense witness at sentencing who could credibly rebut the prosecution's narrative as to the amount of loss, number of victims and restitution. (Doc. No. 2 at 58). Petitioner claims that his own research in jail revealed that Michael Attilio Mangarella, was convicted of operating seven

fraudulent sweepstakes centers in Costa Rica could have testified about the "first-hand knowledge of the intricacies of such operations and specifically, the employment of runners." (Doc. No. 2 at 59). This testimony, according to Petitioner, would have refuted Agent Kost's "speculative" conclusions about the exclusivity of runners. (Doc. No. 2 at 60). Petitioner repeatedly instructed counsel to interview Mangarella, who refused, stating it was counsel's decision to make.

Attorneys have wide latitude in determining which witnesses to call as part of their trial strategy. See generally Pruett v. Thompson, 996 F.2d 1560, 1571 n.9 (4th Cir. 1993) (decisions about what types of evidence to introduce "are ones of trial strategy, and attorneys have great latitude on where they can focus the jury's attention and what sort of mitigating evidence they can choose not to introduce.").

Petitioner's contention that testimony from a convicted sweepstakes fraudster who has no apparent relationship to Petitioner's case somehow would have somehow resulted in a lower sentence is too speculative to support relief. See Dyess, 730 F.3d at 364-65 (rejecting § 2255 petitioner's ineffective assistance claim where he offered nothing more than speculative conclusions in explaining who counsel should have called and what aid their testimony would have provided to his case).

(iii)     Petitioner contends that counsel was ineffective for failing to adequately develop the facts in the trial court, file Movant's complete objections to the PSR, failure to develop an adequate and meaningful record on appeal,

Petitioner stated in open court that he read the PSR, understood it, and had enough time to review it with counsel. (3:12-cr-259, Doc. No. 177 at 2). Counsel presented several objections to the PSR, moved for a below-guidelines sentence, and succeeded in both lowering the guideline

range and obtaining a below-guideline sentence. Petitioner's present contention that counsel should have done more to argue and preserve sentencing issues is refuted by the record.

Moreover, any suggestion that sentencing calculation errors occurred to which counsel should have objected is barred to the extent that the Fourth Circuit reviewed the record and determined that the Court did not clearly err in calculating the loss amount, number of victims, applying enhancements for vulnerable victims and a supervisory role. Tonsing, 629 Fed. Appx. at 464. Petitioner's attempt to recast these claims under the guise of ineffective assistance of counsel is rejected. See Boeckenhaupt, 537 F.2d at 1183 (criminal defendant cannot "recast, under the guise of collateral attack, questions fully considered by this court [on direct appeal]").

**(D)** **Appeal**

Petitioner contends that appellate counsel was ineffective for: (i) representing Petitioner on direct appeal despite having represented Petitioner at trial, which resulted in a gross conflict of interests and breakdown in the appellate mechanism and sabotaging Petitioner's direct appeal; (ii) refusing to raise Petitioner's non-frivolous argument regarding restitution; (iii) refusing to challenge the number of victims (Doc. No. 2 at 56); and (v) failing to argue merger (Doc. No. 2 at 72).

(i)      First, Petitioner contends that counsel had a gross conflict of interest because he represented Petitioner on trial as well as on direct appeal, which resulted in sabotaging his direct appeal.

To establish ineffective assistance of counsel based on a conflict of interest, a defendant who raised no objection at trial must demonstrate that (1) counsel operated under an "actual conflict of interest;" and (2) this conflict "adversely affected his lawyer's performance." United States v. Dehlinger, 740 F.3d 315, 322 (4th Cir. 2014) (quoting Cuyler v. Sullivan, 446 U.S. 335,

348 (1980)). If the petitioner satisfies this showing, "prejudice is presumed and [he] need not demonstrate a reasonable probability that, but for counsel's conflicted representation, the outcome of the proceeding would have been different." Woodfolk v. Maynard, 857 F.3d 531, 553 (4th Cir. 2017) (citing United States v. Nicholson, 611 F.3d 191, 195 (4th Cir. 2010)). An actual conflict exists when a petitioner shows that his counsel "actively represented conflicting interests." Sullivan, 446 U.S. at 350. "A defendant has established an adverse effect if he proves that his attorney took action on behalf of one client that was necessarily adverse to the defense of another or failed to take action on behalf of one because it would adversely affect another." Mickens v. Taylor, 240 F.3d 348, 360 (4th Cir. 2001) (en banc). A showing of adverse effect requires the petitioner to: (1) "identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued;" (2) show that this strategy "was objectively reasonable under the facts of the case known to the attorney at the time," and (3) show "that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." United States v. Dehlinger, 740 F.3d 315, 322 (4th Cir. 2014) (quoting Mickens, 240 F.3d at 361). Because an actual conflict of interest requires not only a theoretically divided loyalty, but also a conflict that actually affected counsel's performance, the actual conflict and adverse effect inquiries are often intertwined. Jones v. Polk, 401 F.3d 257, 267 (4th Cir. 2005).

Petitioner has failed to show that counsel actively represented conflicting interests or that counsel acted or failed to act to Petitioner's detriment. Which claims to raise on direct appeal were within counsel's discretion. See generally Knowles, 556 U.S. at 123 ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success."). Moreover, counsel's decision not pursue the claims that Petitioner has identified in his § 2255 petition are meritless for the reasons set forth in the following

discussion and therefore counsel's decision not to raise these claims on direct appeal was not objectively unreasonable. See Coley v. Bagley, 706 F.3d 741, 752 (6th Cir. 2013) ("[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial."); see Schneider v. United States, 864 F.3d 518 (7th Cir. 2017) (appellate counsel was not ineffective for failing to raise trial counsel's alleged ineffective assistance on direct appeal because the complaints about trial counsel were meritless).

(ii)     Petitioner contends that counsel ignored his repeated instructions to argue on appeal that the restitution amount included losses that were not set forth in the indictment, agreed to by Petitioner in a plea agreement, or authorized under the Mandatory Victims Restitution Act.

"[F]ederal courts do not have the inherent authority to order restitution[.]" United States v. Cohen, 459 F.3d 490, 498 (4th Cir. 2006). "The power to order restitution must therefore stem from some statutory source," United States v. Broughton-Jones, 71 F.3d 1143, 1149 (4th Cir. 1995) (quotation omitted), such as the Mandatory Victim's Restitution Act (MVRA), 18 U.S.C. § 3663A. See United States v. Steele, 2018 WL 3595764, __ F.3d __ (4th Cir. July 27, 2018).

The MVRA provides that the district court "shall order ... that the defendant make restitution to the victim of the offense" upon conviction for "an offense against property ... including any offense committed by fraud or deceit." 18 U.S.C. §§ 3663A(a)(1), (c)(1)(A)(ii).  The MVRA requires courts to issue restitution pursuant to 18 U.S.C. § 3664, which instructs the court to "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A); see Steele, 2018 WL 3595764 at *2. Under conspiracy law, a defendant is liable for the conduct of all co-conspirators that was in furtherance of the conspiracy and reasonably foreseeable to him. Pinkerton v. United States, 328 U.S. 640, 646-47 (1946). The government

bears the burden of proving a victim's loss by a preponderance of the evidence. United States v. Wilkinson, 590 F.3d 259, 268 (4th Cir. 2010) (citing 18 U.S.C. § 3664(e)). However, there is no prescribed statutory maximum in the restitution context, so restitution does not need to be found by a jury. See United States v. Day, 700 F.3d 713 (4th Cir. 2012) (holding that Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), does not apply to restitution). Under the MVRA, "each member of a conspiracy that … causes property loss to a victim is responsible for the loss caused *by the offense*." United States v. Newsome, 322 F.3d 328, 340 (4th Cir. 2003). The amount of losses relevant to finding the appropriate offense level, which focuses on "relevant conduct," is not the same question as the amount of losses properly covered by an order of restitution. Id. at 341.

Petitioner's allegation that counsel failed to argue that the restitution amount should have been found by the jury is refuted by the record and meritless. Petitioner argued on direct appeal that the Court was required to submit the restitution amounts to the jury but the Fourth Circuit "conclude[d] that the district court was not required to submit the facts underlying [petitioner's] … restitution amount[] to the jury." Tonsing, 629 Fed. Appx. at 465. Petitioner's contention that the amount of restitution was limited to the victims and amounts named in the indictment is incorrect; he is liable for the conduct of all co-conspirators that was in furtherance of the conspiracy and reasonably foreseeable to him. See Pinkerton, 328 U.S. at 646-47; see, e.g., Newsome, 322 F.3d at 338 (rejecting the argument that defendant was only responsible for the value of the two logs he was convicted of selling where he was also charged with conspiracy).

(iii)     Next, Petitioner contends that counsel refused to challenge the number of victims on direct appeal. (Doc. No. 2 at 56).

This claim is conclusively refuted by the record. Counsel argued on direct appeal that the Court erred in calculating the number of victims. The Fourth Circuit rejected this claim, stating

that "[a] Government witness testified at sentencing regarding his estimation of the … number of victims, and the district court adopted loss amounts that were considerably lower than these estimates. The district court did not err in finding that these estimates were reasonable and supported by a preponderance of the evidence, and in applying sentencing enhancements based on these estimates." <u>Tonsing</u>, 629 Fed. Appx. at 465. Petitioner has failed to explain what more appellate counsel should have argued on appeal with regards to the number of victims that had a reasonable probability of prevailing on direct appeal.

(iv)    Finally, Petitioner contends that appellate counsel was ineffective for failing to argue that the Government's "shifting nature of the claims" resulted in merger that counsel failed to raise on direct appeal. (Doc. No. 2 at 72).

As a preliminary matter, this claim is factually incorrect insofar as counsel did raise the merger argument on direct appeal but the Fourth Circuit declined to resolve it on the merits because Petitioner did not raise it in a Rule 29 Motion. <u>Tonsing</u>, 629 Fed. Appx. at 465.

Appellate counsel cannot be deemed ineffective with regards to the merger issue because it is meritless for the reasons set forth in Section (2)(B), *supra*. <u>See</u> <u>Coley</u>, 706 F.3d at 752 ("[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial."); <u>Schneider</u>, 864 F.3d at 518 (appellate counsel was not ineffective for failing to raise trial counsel's alleged ineffective assistance on direct appeal because the complaints about trial counsel were meritless).

## IV.    PENDING MOTIONS

**(1)    <u>Motions to Correct the Docket</u> (Doc. Nos. 8, 20, 53)**

Petitioner has filed several Motions in which he claims that the Clerk has mischaracterized various docket entries on the Court's electronic docketing system and seeking other miscellaneous

relief. Petitioner's allegations of procedural, rather than substantive errors, have no bearing on the merits of these proceedings and will be denied.

**(2)** **Motion to Exceed Page Limit** **(Doc. No. 12)**

Petitioner's Motion to file a Reply to the Government's Response that exceeds the page limit permitted by the Rules, (Doc. No. 12), will be granted insofar as the Reply has been accepted and considered by the Court.

**(3)** **Motions to Conduct Discovery** **(Doc. Nos. 16, 40, 62, 79)**

Petitioner has filed several Motions seeking to conduct discovery in order to "expand the record" in this § 2255 proceeding.

Rule 6(a) of the Rules Governing Section 2255 Proceedings in the United States District Courts require a party requesting discovery to provide reasons for the request, and must include any proposed interrogatories, requests for admission, and must specify any requested documents.

Petitioner's various Motions fail to demonstrate good cause why discovery should be authorized and, therefore, the Motions will be denied.

**(4)** **Motions for the Appointment of an Investigator** **(Doc. No. 22, 88)**

Petitioner seeks the appointment of an investigator to determine why he has experienced mailing difficulties while incarcerated and to investigate the prosecutors' allegedly improper service of process in this § 2255 proceeding.

Petitioner has been able to fully participate in the instant proceedings as demonstrated by his copious filings. Alleged irregularities with regards to mailings into his institution are beyond the scope of the instant § 2255 proceeding and Petitioner's request for the appointment of an investigator will be denied.

**(5)** **Motions for *Nunc Pro Tunc* Docketing** **(Doc. Nos. 36, 37, 38, 41, 47)**

Petitioner asks that the Court accept various pleadings *nunc pro tunc* to various filing dates. The United States has not alleged that any of Petitioner's pleadings are untimely and the Court has not applied any time bar in this case. Therefore, his Motions seeking *nunc pro tunc* docketing of various pleadings will be denied as moot.

**(6)**     **Motions for Default Judgment** **(Doc. Nos. 45, 49)**

Petitioner seeks default judgment because the Government allegedly failed to defend against his claims or respond to them, which acted as admissions. The Government filed a Response in accordance with the Court's Order to show cause why relief should not be granted and did not default its duty to respond. The Government has responded to Petitioner's claims, including those that Petitioner alleges were waived. They fail for the merits for the reasons set forth in the Discussion section, *supra*. These Motions, therefore, will be denied.

**(7)**     **Motions for Sanctions** **(Doc. No. 56, 73, 96)**

Petitioner alleges that the prosecutors violated the code of professional conduct, obstructed justice, made fraudulent representations, and violated Petitioner's civil and constitutional rights. The Court finds that Petitioner's claims of misconduct are incredible and immaterial to these § 2255 proceedings. Therefore, his various Motions alleging misconduct by the prosecutors will therefore be denied.

**(8)**     **Motions to Strike** **(Doc. Nos. 47, 57)**

Petitioner has filed Motions seeking to strike various Government pleadings. The Motions have no basis in fact or law and will be denied.

**(9)**     **Motion for Extension of Time** **(Doc. No. 59)**

Petitioner's Motion for an extension of time to file his Reply is moot because the Reply has already been filed and the Government did not object to the late filing. The Motion will therefore be denied as moot.

**(10)** **Motions for Leave to Amend and for an Evidentiary Hearing (Doc. No. 96, 102)**

Petitioner has filed a "Motion for Leave to File Amended October 12, 2016 Motion (Fed. R. Civ. P. 15(d))," (Doc. No. 96), consisting of a 112-page Amended § 2255 petition and declaration alleging that the Government has engaged in fraud since September 26, 2016, that these issues are sufficiently related to the issues raised in prior filings that their joinder would not delay the proceedings or prejudice any party. In his "Judicial Notice & Demand for Evidentiary Hearing as to Doc. No. 96 Filings," (Doc. No. 102), Petitioner asks the Court not to construe his Motion to Amend as a successive § 2255 without granting him warnings pursuant to Castro v. United States, 540 U.S. 375 (2003), and that he should be granted an evidentiary hearing on his § 2255 claims.

Petitioner's allegations that the Government has engaged in fraud have been denied as incredible. His motion to amend his § 2255 petition more than two years after his § 2255 petition was filed, and nearly 2 years after the Government filed its response, is denied. His motion for an evidentiary hearing is denied as all his claims are facially insufficient, refuted by the record, and/or meritless.

## V.     CONCLUSION

For the foregoing reasons, the Court will dismiss and deny Petitioner's § 2255 Motion to Vacate.  Petitioner's *pro se* Letters are construed as Motions seeking sentencing reduction pursuant to § 3582 and are denied.

**IT IS, THEREFORE, ORDERED** that:

1.    Petitioner's Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 2), is **DENIED**.

2.    Petitioner's Motion to file a Reply to the Government's Response that exceeds the page limit permitted by the Rules, (Doc. No. 12), is **GRANTED** insofar as the Reply has been accepted and considered by the Court.

3.    Petitioner's Motion for an Extension of Time to file a Reply, (Doc. No. 59), is **DENIED** as moot.

4.    The remaining Motions, (Doc. Nos. 8, 16, 20, 22, 36, 37, 38, 40, 41, 45, 47, 49, 53, 56, 57, 62, 73, 79, 88, 96, 102), are **DENIED**.

5.    **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: August 7, 2018

Robert J. Conrad, Jr.
United States District Judge